The Chancellor.
The impression produced upon my mind upon my first examination of this case was, that this bond and mortgage should stand only as security for the principal and interest of the debt secured by the original bond and mortgage; but with some doubt whether the evidence would justify a judicial decision corresponding with that impression. After a critical examination of the evidence, with a view to the peculiar relative situation of the parties to each other, my mind has been relieved from the doubts which at first perplexed it.
The relative situation of the parties to each other is entitled to much consideration in deciding the case. The complainant is the mother of the defendant, and at the time of the transaction in controversy was of quite advanced age. The defendant, not only as her son, but in other respects, bore to her a relation of special trust and confidence. In 1833, the defendant conventionally became her trustee. In that year, the complainant’s daughter conveyed to the defendant ninety-nine acres of land, in the *144 county of Middlesex (which is the land covered by the bond and mortgage), in trust, for her to take and receive the rents, issues, and profits thereof during her coverture, and so as the same should not be liable to the debts of her husband, nor in any way subject to his disposal, direction, or control; and in further trust, that in case the complainant should survive her said husband, from and immediately after the death of her said husband, to the use, benefit, and behoof of the complainant, her heirs and assigns for ever. Notwithstanding his acceptance of this trust, the defendant took from his mother a mortgage on the trust property to secure a debt, which his father owed him, of $700. This mortgage was void at law, because the complainant, being a married woman, could not execute a deed without her husband joining with her in the conveyance. But if it had been executed with all the formalities of the law, a court of equity would have declared it void.
Here was the case of a trustee holding property in trust for a married woman, the very object of which trust was to preserve the property for her free from the control and debts of her husband, himself taking a security upon the trust property for a debt which the husband owed him.
The mortgage was wholly worthless. It was a breach of the trust.
On the 28th of November, 1848, the husband died; and on the 28th of the same month, while the defendant still held the legal title to the trust property, the $700 mortgage was given up by the defendant to the complainant, and she executed and delivered to him her bond and mortgage upon the trust property to secure the sum of $1200.
In the case of a mortgage executed under such circumstances, a -court of equity will require the mortgagee to prove, very clearly, the consideration of his mortgage; and if there is any doubt as to the consideration being such as a court of equity ought to recognise, or of the *145 mortgage having been executed by the mortgagee without a perfect knowledge of its contents and effect, the court will not enforce the mortgage. The rule of law, so urgently pressed by the counsel of the defendants, that the formal execution of the bond and mortgage being proved, they import a consideration of a character to be overcome only by the most undoubted proof, is not applicable to a bond and mortgage executed between such parties and under such circumstances as these were. The circumstances throw the burthen of proof upon the other party, and the mortgagee must sustain his mortgage by proving the consideration to be such as a court of equity will recognise as a good consideration.
From this point, then, let us examine the present case. The complainant files her bill to have the bond and mortgage declared invalid, so far as it exceeds the principal and interest embraced in the bond and mortgage of 1846. To that extent she recognises the present mortgage. She is willing now, being at perfect liberty to do so, to assume the debt of her husband to the amount called for by the bond and mortgage of 1846. This, she admits, she intended to do by the execution of the present bond and mortgage. She waives any technical difficulty that might be interposed, from the fact of the legal title by the trust deed having been in the defendant at the time of her execution of the mortgage. But she resists the mortgage as a security for any further or other debts of her husband.
The bill alleges that the defendant, being informed that the mortgage of $700 on the trust estate was not a safe security, applied to the complainant to make him secure, by giving a new bond and mortgage for the same, and that she, being willing so to do, directed the defendant to have a new bond and mortgage prepared for an amount equal to the principal and interest due on the $700 bond of the 7th of April, 1846.
Now it is important carefully to observe the defendant’s answer to these allegations of the bill. If the eomplain *146 ant executed this mortgage intelligently, with a full understanding of its object and contents, and without any influence exerted by the defendant, he, if any one, can give us sa satisfactory account of the particulars of the transaction. He says, it is true, that he was dissatisfied with the $700 mortgage given to him in the form it was given, but he denies that this was the only money due to him from the said Matthias, the husband of the complainant, or from the said complainant herself, but, on the contrary, alleges that there were certain other debts due from the said Matthias and the complainant, and which had accrued since the giving of the said $700 mortgage, which he proposed to secure by a new mortgage; that the indebtedness of the said complainant and her husband arose in the following manner: the said complainant and her husband lived on a small farm — the premises embraced in the mortgage — which, with a small dwelling in Cranbury, was all the real estate in which they had any interest, or from which they derived any means of subsistence; that their personal property consisted of their household furniture. and a small stock on the said farm; that two unmarried daughters lived with them, one of whom was deaf and dumb; that the property being inadequate for their support, they were in the habit of frequently applying to him for assistance in their pecuniary embarrassments, which were frequent; that the said sum of $700 was lent and advanced to his father to prevent a sale of the said farm upon a judgment at law against him, and that he advanced other moneys for his father to pay his debts with; that after the death of his father, and just before the execution of the mortgage now in question, he informed the complainant that the said $700 mortgage was unsatisfactory to him, and proposed to her that she should give him a new mortgage to secure the principal and interest of the said first mortgage and such other moneys as were since due him from his said father, and since his death from her, the complainant, and that the *147 said complainant immediately assented and agreed so to do; that at that time he held the notes of hand of his said father, as follows, viz. one for about jjthej sum of $30, another for about $55, and another| for the sum of about $70 — the first two of which said notes were given to the defendant by his father, and the last was a note of his father, which the defendant had paid and taken up, in the hands of one Baird. He further says, that there was due to him from his father the sum of $175, which he had advanced and paid for two horses, and that he had an account, partly against his father and partly against the complainant, for articles furnished them ; and that at the time of the making of the said mortgage the said notes and account and the $700 mortgage were produced, and all the debts were shown and fully explained to, and understood by the complainant, and that the principal and interest amounted to the sum of $1200, and that the sum of $1200 was then mostly due in manner aforesaid. Now, according to this statement and explanation of the defendant himself, this bond and mortgage, for the excess over what was then due on the $700 mortgage, cannot be sustained in this court. Here was an old woman, the mother of the defendant, and he holding all her property in trust. Before her husband had been dead a month, he presents, as legal demands against her, debts which he alleges her husband owed him, and other debts, of which he gives us no account as to their amount, but which, he says, were contracted after her husband’s death, which was within a month previous, and solicits her to make good a worthless security of $700, and to increase it to $1200, to pay him for debts which his father owed, which the complainant was neither legally or morally bound to pay. And he takes from his mother a mortgage of $1200 on a trust property, the legal estate of which was in himself. It is not pretended that she was at all cognizant as to the validity or fairness of these debts, or as to her legal obligation to pay them, or that she had any one to con* *148 suit and advise with her as to the propriety of her paying them. They were not legal claims against her; and in the impoverished condition which the hill alleges she was then in, it was not right for the defendant to ask her for the security, and there was no propriety in her giving it. The defendant stood in a confidential relationship to her as her son and as her trustee; and the demand of the security from her, under such circumstances, was taking an undue advantage of her that this court cannot countenance.
But the evidence places the defendant in a still more unfavorable position. If he made the same statements to the complainant respecting the debts, as he alleges in his answer he did, they were untrue, according to the evidence produced in this cause, both by the complainant and defendant himself. He says the debts which were due him from his father and the complainant had accrued since the giving of the $700 mortgage, and he specifies most of them. As to the two largest debts — the one of $70, paid to Baird, the defendant proves by Fleming, his own witness, that it was paid, if paid by him at all, in the year 1839, which was nine years before the death of his father, and six years before the giving of the $700 mortgage. And as to the $175, paid for horses, according to the testimony of his witness, McDowell, the money must have been paid several years before his father’s death. As to the $55, which he says was included in the $1200 mortgage, he told John Mason, after the execution of the mortgage, that he still held that note, and also the claim of $30, and that they were not included in the mortgage.
In addition to all this, there is other evidence as to the conduct of the defendant, and as to his own declarations, to impeach the fairness of this transaction. The account, given in the answer, as to what took place when the bond and mortgage were executed, and particularly as to the explanations which were made by the defendant to the complainant, is disproved by both witnesses present at the *149 execution — Susan Perrine, the defendant’s sister, and William A. Bowne, the person who drew the papers for the defendant, and whom he took with him to aid in and witness their execution. Susan Perrine contradicts the answer in almost every particular. But I rely upon the evidence of Bowne, as the friend of the defendant, and a witness whom he produces to corroborate his statements. He says there were some papers produced and examined, but that lie did not look over them. Now the old bond and mortgage were produced, and these answer the description of the witness when he speaks of “ some papers.” It is certainly impossible that the papers could have been produced, and such explanations been made as the occasion and transaction called for, without making a stronger impression upon the mind of the witness. But the witness says he inserted the sum of §1200, as the consideration, at the request of the defendant, who told him that it included a former mortgage and some other matters that had accrued since between him and his mother. This statement is inconsistent with the claims and demands wdiich the defendant, in his answer, says make up the amount of the mortgage. The production of the old notes and an explanation of the claims could not have failed making an impression upon the mind of the witness not easily eftaced.
Again. This mortgage was signed by the complainant on the 28th of December, 1848, and yet it was not put upon record until five years afterwards — the 18th of June, 1858. The evidence is very strong to show that the delay in recording it arose from a desire, on the part of the complainaut, to conceal its contents as long as possible without jeopardizing the priority of his security. His counsel “was so hard pressed by the evidence on this point that, on the argument, he admitted that the defendant did keep it from the record because he wished to conceal its amount — not from his mother, however, but from the other members of the family — his sisters — who would be *150 disposed to make trouble iu tbe family in consequence of it. Such a reason would be entitled to much more weight with the court in the defendant’s answer under his oath, than it is coming from his counsel in an argument to avoid the force of the evidence. There is a specific interrogatory in the bill calling upon the defendant to explain why there was this delay in putting his mortgage upon record, and he answers, not by giving tbe plausible reason urged by his counsel in argument, but says, that his reason for not having the same recorded sooner was that he did not consider it necessary for his security. But did he not have a motive in keeping the mortgage from the public record — and was it not to conceal the amount not only from his sisters, but from the complainant ? The complainant told John Mason, one of the witnesses, that the new bond and mortgage were for $800, or close to it. This evidence was legalized by the manner in which it was elicited on his examination of the witness by the defendant. In a conversation between the defendant and Mason, the defendant told the witness that -he held the $30 and $55 claims still, and was losing interest. The witness expressed his surprise, and told him he supposed that all the old folks owed him was put in the new bond and mortgage, and then inquired — how comes it close to $800 ? The defendant replied, that he had nothing put in the new bond and mortgage except the amount of the $700 mortgage, and the Banning debt, which amounted to near $50. The defendant also told Mr. Bowne, who drew the papers and witnessed the execution, and who was the only person whom it appears knew the amount, that he wanted the matter kept private, as his mother told him she did not want the other children to know that the second mortgage included anything more than the first. That this was not the true reason is manifest from the defendant’s answer; and he was unwilling, on his oath, to give that as his reason.
The evidence shows, very satisfactorily, that this mort *151 gage should stand, as security only, for the amount intended to have been secured by the $700 mortgage; and that the complainant never intended to have embraced in it the debts which it includes beyond that mortgage debt. The debts which it embraces are not the debts which the defendant admits, in his answer, he asked the complainant to have included, and to which she assented. The complainant consented, according to the answer, to include in the mortgage the debts which were due from the father to the son since the execution of the $700 mortgage. It is proved that most, if not all the debts, accrued before that time.
This court will not sanction the mortgage for any further amount than for that the complainant now agrees it shall stand, because the confidence which was reposed in the defendant was abused by him, and it is unreasonable, under the circumstances, that he should have the benefit of it, and because it is shown that there is no good consideration beyond that amount.
The complainant in the original bill is entitled to a decree, with costs, declaring the mortgage in question as a security only for the amount intended to have been secured by the $700 mortgage.
The complainant in the cross-hill is entitled to a decree on his mortgage for the amount intended to have been secured by the $700 mortgage.